UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ROBERT WAYNE LAIRD, JR. | CIVIL ACTION |
| VERSUS | NO. 11-1353 |
| SHERIFF MARLIN GUSMAN ET AL. | SECTION "R" (2) |

## REPORT AND RECOMMENDATION

Plaintiff, Robert Wayne Laird, Jr., is a prisoner currently incarcerated in the Orleans Parish Prison system ("OPP"). He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Orleans Parish Criminal Sheriff Marlin Gusman and Deputy Sweeden, alleging that they failed to protect him from an attack by other inmates. Plaintiff seeks an award of 2,500,000.00 "so that I could get my face in order." Record Doc. No. 3 (Complaint at ¶¶ IV and V, pp. 3-5).

On August 15, 2011, I conducted a telephone conference in this matter. Participating were plaintiff pro se and Tim Richardson, counsel for defendants. Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## THE RECORD

Laird testified that he is currently incarcerated in OPP awaiting trial on a Plaquemines Parish charge of aggravated incest. He stated that no trial is presently set

in his criminal case. Laird said he has been held in OPP on that charge since January 31, 2011.

Laird's testimony reiterated in substantial part the written allegations previously made in his various submissions to the court. Record Doc. Nos. 3 (complaint) and 12 (statement of facts and expected testimony). He stated that his sole claim in this case arises from an attack against him by two other inmates [Joseph Gibbons or Griffin and Christian Wallace] in OPP on February 19, 2011, in which he suffered serious injuries. Plaintiff testified that earlier on that same date, he had been involved in a fight with a third inmate named Quincy Thompson. He stated that he and Thompson were separated into separate tiers after the fight, but "for some reason . . . a few hours later, he [Thompson] made some claim . . . and got us traded. . . . I had enemies on the other side and told the officer I should not be put over there."

Asked to explain Thompson's role in the attack by the other two inmates on which he bases his claim in this case, Laird said, "apparently he [Thompson] got it set up over there," meaning Thompson instigated the attack against him because "he obviously told some people . . . the inmates who attacked me on that side [in the other tier] . . . to jump me."

Asked to explain his description of the incident in greater detail, Laird said he does not blame any defendant for the original dispute between him and Thompson, which he

described as "a small confrontation." He specified that the attack by the other two inmates, Gibbons or Griffin and Wallace [which he <u>does</u> blame on defendant Sweeden], occurred six to eight hours after his confrontation with Thompson. Laird testified that about six hours after his dispute with Thompson, Deputy Sweeden told Laird to pack up his things because he was being moved. "I asked him where I was going," Laird said, ". . . [but] he wouldn't answer me. I told him I had enemies on the other side. He put me over there anyway. . . I was in there ten minutes and got jumped by the two individuals that I named [Gibbons or Griffin and Wallace]."

    Laird testified that he told defendant Deputy Sweeden he "had enemies on that side" because inmates in the tier next door to where he had been housed "had told me under the door that they were going to beat me up because I was a rapist already." He said the two jailhouse tiers were "right beside each other; there's a door [between them] that you can hear each other on each side. They'd be hollering under the door that if you come over here they're gonna mess me up." Laird said he could not identify which inmates had yelled at him under the door.

    Asked why Sweeden moved him into that tier, plaintiff said, "I have no idea why they moved us. He [Sweeden] had separated us," meaning Laird and Thompson after their confrontation by moving Thompson into the tier next door, while Laird stayed in the original tier. Laird testified that six or seven hours later Sweeden "switched us for

some reason," meaning Thompson was moved back into the original tier, while Laird was moved into the separate tier next door where "I had enemies" and where Thompson had just been located.

Laird testified that he had no previous fights with anyone else in the jail before his confrontation with Thompson. He stated that the verbal threats made "under the door" by other inmates occurred after Laird's dispute with Thompson when Thompson had been moved next door to separate him from Laird. "He [Thompson] apparently was setting all this up," Laird said, since "he was mad because of our little confrontation." Laird testified that he was told by another inmate, Eric Jay Porterpan, that Thompson had "bragged that he had set this up," although he said he did not know how Thompson had gotten Deputy Sweeden to switch Laird and Thompson.  "I think he [Thompson] told them [Sweeden and other officers] that he was being threatened on that side . . . and that he should switch us around," Laird speculated. Laird acknowledged that Deputy Sweeden and the other officers were trying to keep him and Thompson apart after their fight, one in Tier B-1 and the other in Tier B-2, even though he alleged they both should have been "locked down."

Laird complained that even after he recovered sufficiently from the attack in the OPP medical unit, he was placed back in the same area with the inmates who attacked him, although no new incidents had occurred.

Consistently with his written allegations, Laird stated that the other inmates, Gibbons [or Griffin] and Wallace, had shouted threats at him under the door because "they saw [Laird's] picture on T.V. and said he was a rapist." Record Doc. No. 12 at p. 3, "but then Eric Porterpan . . . told me that Quincy [Thompson] had instigated all of this." Laird testified that he was kept on the OPP medical tier for three (3) months for treatment of his broken jaw and laceration suffered in the attack. He said that when he returned to the tier, Eric Porterpan told him that Thompson "was laughing and bragging" and got the other inmates to attack him "because I was a rapist."

Laird summarized his claim against Sweeden as follows: "I told the man not to put me over there because I had enemies, and he put me over there anyway." He acknowledged that he did not tell Sweeden who his enemies were. "I just said they were hollering under the door that I was a rapist and they were gonna bust me up . . . I didn't have any specific enemies."

Plaintiff reiterated that the attack in which he was injured occurred within ten minutes of his transfer to that tier and lasted only about a minute. He said he was struck from behind, knocked to the ground and then kicked. He said Deputy Sweeden came in and took him out of that tier quickly after the attack, although he had tried to get Sweeden's attention over the intercom before that. He said he was only in the tier for a total of about ten minutes. He said Sweeden told him he should have "beat on the glass"

to get his attention because the intercom was not working properly. He stated that Thompson was not in that tier when he was attacked.

Asked to describe his injuries, Laird stated that his jaw was fractured in six places and he had a laceration above his eye that required six stitches. "They cut me from my ear to my chin and they had to put three metal plates in there to hold it together." Laird said his condition is now "stable" but he does not have feeling in the side of his face. He confirmed that the medical records that I previously ordered, and that he had received and reviewed, Record Doc. Nos. 6 and 18, reflecting his injuries, are accurate.

## **ANALYSIS**

I.   STANDARDS OF REVIEW

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless whether it has also been filed in forma pauperis. 28 U.S.C. § 1915A(a); Lewis v. Estes, 242 F.3d 375, 2000 WL 1673382, at *1 (8th Cir. 2006); Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004); Martin v. Scott, 156 F.3d 578, 579-80 (5th Cir. 1998). Such complaints by prisoners must be dismissed upon review if they are frivolous or fail to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1); Shakur, 391 F.3d at 113; Carr v. Dvorin, 171 F.3d 115, 116 (2d Cir. 1999).

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'" Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended). A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims. Spears, 766 F.2d at 180. "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the

actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable. "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents. A defendant may not use medical records to refute a plaintiff's testimony at a Spears hearing." Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)). However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'" Gobert v. Caldwell, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)).  "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269.  A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as legally frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims.  Plaintiff's complaint, as amended by his testimony at the Spears hearing, fails to state a cognizable Section 1983 claim of violation of his constitutional rights, even under the broadest reading.[1]

---

[1] Pro se civil rights complaints must be broadly construed, Moore, 30 F.3d at 620, and I have broadly construed the complaint in this case.

## II.     FAILURE TO PROTECT

Construed broadly, Laird's allegation that he was attacked by other inmates within OPP may assert a claim that prison officials unconstitutionally failed to protect him from harm. Laird was a pretrial detainee at the time of the incident on which he bases this claim. In Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996), the Fifth Circuit stated:

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Thus, regardless whether the inmate is a pretrial detainee or a convicted prisoner, the standard of liability is the same for episodic acts or omissions of jail officials that expose an inmate to being harmed by another inmate. Hamilton v. Lyons, 74 F.3d 99, 104 n.3 (5th Cir. 1996); Hare, 74 F.3d at 650.

Prison officials have a duty to protect inmates from harm or violence by other inmates. Farmer v. Brennan, 511 U.S. 825, 833 (1994); Hare, 74 F.3d at 650. "To establish a failure-to-protect claim, an inmate must show that he was 'incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection.'" Pogue v. Bello, 275 F.3d 1079, 2001

WL 1467095, at *1 (5th Cir. Oct. 25, 2001) (quoting Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995)).  Here, while plaintiff may allege that he was exposed to harm by prison officials' acts or omissions in failing to protect him from an attack by other inmates, he fails to state a claim cognizable as a matter of law under Section 1983.

A convicted prisoner or pretrial detainee may succeed on a claim for damages under 42 U.S.C. § 1983 for failure to protect from harm only if he demonstrates that there has been "deliberate indifference" by prison officials or other state actors.  Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Constitution.  Estelle v. Gamble, 429 U.S. 97, 105-06 (1976); accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976); Hare, 74 F.3d at 650.  "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it."  Farmer, 511 U.S. at 847.

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Constitution by failing to protect him from attack by another inmate.  "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities."  Id. at 834 (quotation omitted).  Thus, plaintiff must show that a risk of

11

serious harm existed from another inmate to satisfy this prong. Wilson v. Seiter, 501 U.S. 294, 297 (1991); Rhem v. Marion County Sheriff Dep't, 263 F.3d 164, 2001 WL 803853, at *1 (5th Cir. June 14, 2001).

Further, the plaintiff must establish that the defendant possessed a culpable state of mind. Farmer, 511 U.S. at 838 (citing Wilson, 501 U.S. at 298). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 834, 837; accord Newton v. Black, 133 F.3d 301, 308 (5th Cir. 1998). "Mere negligence or a failure to act reasonably is not enough. The officer must have the subjective intent to cause harm." Mace v. City of Palestine, 333 F.3d 621, 626 (5th Cir. 2003). If the court finds that one of the components of the test is not met, it need not address the other component. Davis, 157 F.3d at 1005.

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. Board of the County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 117 S. Ct. 1382, 1391 (1997) . . . . The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

Southard v. Tex. Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (citations omitted) (emphasis added). "'Subjective recklessness,' as used in the criminal law, is the

appropriate test for deliberate indifference." Norton, 122 F.3d at 291 (citing Farmer, 511 U.S. at 838-40).

In the instant case, plaintiff's pleadings as expanded by his testimony establish that nothing more than an episodic act or omission as defined in Hare is at issue in this case. Thus, the "deliberate indifference" standard applies and plaintiff must allege facts sufficient to establish that defendants knew he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. In this case, Laird fails completely to allege facts sufficient to establish that Deputy Sweeden possessed a culpable state of mind sufficient to establish deliberate indifference.

It cannot be concluded that Deputy Sweeden deliberately exposed plaintiff to a substantial risk of serious harm in the constitutional sense. Plaintiff's testimony confirms that he and another inmate, Quincy Thompson, had been in a confrontation necessitating that they be separated for security reasons. That is what Deputy Sweeden did. Laird's testimony blames two other factors, not any deliberate action by Deputy Sweeden, for the subsequent attack against him by two other inmates. The first is inmate Thompson's instigation of the attack by his statements to the other inmates and by his alleged lie to Sweeden that he had been threatened in the other tier. The second is a television broadcast that had led the other inmates to label Laird a "rapist." Laird's vague and general statement allegedly made to Sweeden that he had unknown and unnamed

"enemies on the other side" is not sufficient to have led Sweeden actually to conclude that Laird faced a substantial risk of serious harm, particularly in light of the obvious concern Sweeden had at that moment for keeping Laird and Thompson separate and apart. Laird's testimony also establishes that Sweeden responded promptly and appropriately when Laird was attacked. As Laird testified, there was no history of prior fights or disputes between him and any other inmates, including the two who attacked him.

Under these circumstances, it cannot be concluded that any act or omission of Deputy Sweeden knowingly exposed Laird to a substantial risk of serious harm or that they were deliberately indifferent in the constitutional sense. See Carrothers v. Kelly, 312 F. App'x 600, 602 (5th Cir. 2009) (dismissal of inmate's suit affirmed where defendant prison guard, who was the only officer on the jail tier at the time of an inmate stabbing, radioed for help and left the tier to obtain assistance, and thereby did not act unreasonably); Curbow v. Jackson, 307 F. App'x 828, 829 (5th Cir. 2009) (dismissal as legally frivolous of suit by inmate stabbed and beaten by other inmates during a prison recreation yard riot affirmed, even though defendants were subjectively aware of some risk but acted reasonably in response to it); Black v. Colunga, 656 F. Supp. 625, 637-38 (E.D. Tex. 2009) (inmate's Section 1983 complaint dismissed when defendant corrections officer did not intervene alone in inmate attack); Graves v. Webb, No. C-07-

361, 2008 WL 1782635, at *1 (S.D. Tex. Apr. 17, 2008) (inmates' claim dismissed where guards left the scene of inmate riot in prison kitchen and returned five minutes later with a riot gun to restore order).

Deputy Sweeden did not have reason or knowledge sufficient for him to believe or conclude that the inmates who allegedly attacked Laird posed a significant risk of danger to Laird under these particular circumstances. There was no history known to Sweeden of prior incidents between Laird and the other inmates. The incident occurred suddenly and without warning. Thus, no deliberate indifference in the constitutional sense has sufficiently been alleged. Any claim that Deputy Sweeden violated plaintiff's constitutional rights by failing to protect him from harm in connection with the attack by other inmates must be dismissed.

### III.    NO LIABILITY OF THE SHERIFF

Laird makes no claim that defendant Sheriff Gusman was personally involved in any of the alleged acts or omissions upon which his claims are based. "There is no respondeat superior liability under section 1983." Eason v. Thaler, 73 F.3d 1322, 1327 (5th Cir. 1996); accord Field v. Corrections Corp., 364 F. App'x 927, 2010 WL 517679, at *1 (5th Cir. 2010); Cox v. Irby, 281 F. App'x 390, 391 (5th Cir. 2008); Kohler v. Englade, 470 F.3d 1104, 1114-15 (5th Cir. 2006). Thus, this defendant cannot be held liable under Section 1983 pursuant to a theory of respondeat superior simply because the

persons allegedly responsible for plaintiff's injury, if any, were in his employ or under his supervision. Sanders v. English, 950 F.2d 1152, 1160 (5th Cir. 1992); Baskin v. Parker, 602 F.2d 1205, 1208 (5th Cir. 1979); Barksdale v. King, 699 F.2d 744, 746 (5th Cir. 1983).

To hold this defendant liable, plaintiff must establish either that he was "personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of [this defendant] . . . and the alleged constitutional violation." Douthit v. Jones, 641 F.2d 345, 346 (5th Cir. 1981); accord Cox, 281 F. App'x at 391 ; Kohler, 470 F.3d at 1115. "It is facially evident that this test cannot be met if there is no underlying constitutional violation." Rios v. City of Del Rio, 444 F.3d 417, 425-26 (5th Cir. 2006) (citing Breaux v. City of Garland, 205 F.3d 150, 161 (5th Cir. 2000)). In the instant action, plaintiff has failed to establish either that this defendant was personally involved in any acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of this defendant and the alleged constitutional violation.

A supervisory official may be held liable for his subordinates' actions only if the official implemented an unconstitutional policy that causally resulted in plaintiff's injury. Monell v. Dep't of Social Servs., 436 U.S. 658, 691-95 (1978); Thompson v. Johnson, 348 F. App'x 919, 921 (5th Cir. 2009) (citing Mouille v. City of Live Oak, 977 F.2d 924,

929 (5th Cir. 1992)); Gates v. Texas Dep't of Protective & Regulatory Servs., 537 F.3d 404, 435 (5th Cir. 2008). Without alleging a particular custom, usage or policy for which the sheriff can be held constitutionally liable, plaintiff fails to state a claim for relief under Section 1983. Monell, 436 U.S. at 691-95; Thompson, 348 F. App'x at 921-22; Mouille, 977 F.2d at 929.

"To hold a supervisory official liable for the acts of a subordinate, Laird must show that "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." Smith v. Brenoettsy, 158 F.3d 908, 911-12 (5th Cir.1998). To state a failure to protect claim under § 1983, Laird must show that he is incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection. Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995). For an official to act with deliberate indifference for purposes of either claim, he "must both be aware of facts from which the inference could be drawn that substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)." Payne v. Pickett, 246 Fed. Appx. 884, 889-90, 2007 WL 2537839, *5 (5th Cir. 2007).

Under these standards, neither Laird's testimony nor his written submissions in this case are adequate to state a cognizable constitutional claim against Sheriff Gusman.

## **RECOMMENDATION**

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[2]

New Orleans, Louisiana, this  24th  day of August, 2011.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[2]Douglass referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

18